GEORGE E. WESCOTT, Appellee, v. THE CITY OF SIOUX CITY, Appellant, and THE LIBRARY & BUILDING ASSOCIATION OF SIOUX CITY, IOWA, Defendant.

**Appeal:** SERVICE OF NOTICE: NECESSARY PARTIES.   In an action by a judgment creditor to set aside a deed as void for want of consideration, or as being in fraud of creditors, and to subject the property to the satisfaction of his judgment, the grantor while a proper party is not a necessary party to an appeal, and failure to serve him with notice will not deprive the appellate court of jurisdiction.

**Fraudulent conveyances:** CREDITORS' SUIT.   A city in exercising its option to repurchase land conveyed to a corporation for the purpose of erecting and maintaining a public library, becomes a purchaser as to the amount paid in excess of its claims against the corporation, and not a mere creditor; and where it knew or had reason to believe that the corporation was seeking to hinder and delay other creditors in making the conveyance, it took the property in excess of its claims as trustee and subject to the demands of the other creditors.   In the instant case it is held that the city knew of the plaintiff's judgment against the corporation and that its officers had either actual or constructive knowledge of the purpose to defraud.

*Appeal from Woodbury District Court.*—HON. JOHN H. OLIVER, Judge.

SATURDAY, FEBRUARY 20, 1909.

CREDITORS' bill to subject certain property, now in

the name of the defendant city, to the payment of a judgment held by plaintiff against the Library & Building Association. .The trial court granted the relief asked, and the defendant the city of Sioux City appeals.—*Affirmed.*

*Fred W. Sargent* and *J. N. Weaver,* for appellant.

*T. F. Bevington,* for appellee.

DEEMER, J.—Originally the property in controversy was owned by the city of Sioux City, but title was held by certain trustees. On account of its indebtedness the city was not able to construct a library building thereon, and the defendant the Library & Building Association was organized and created under the laws of the State for the purpose of forming and maintaining a library, reading room, and museum for the city, and the erection of a building for the use of such library and for the support and maintenance of the same. This latter corporation was not one for pecuniary profit, and was created on or about October 16, 1890. In February of the year 1891 the city passed a long ordinance, in which it was recited that it (the city) could not erect a library building, but that it would be erected by a private corporation upon its own credit, and then purchased by the city and paid for in installments out of the library tax, and that offices could thereby be procured for the city and the use thereof paid for out of the general funds of the city, and a grant was made by said ordinance to the library association of authority to erect and maintain a library for the use of the inhabitants, the city to cause the land in question to be conveyed to the library association upon the agreed consideration of $30,000, to be accounted for as payment of that amount of the purchase price upon repurchase by the city. Conveyance was accordingly made of the property to the Library & Building Association. It was also provided

in the ordinance that the library association should within eighteen months construct a suitable library building upon the property described, the cost of which should not exceed the sum of $150,000. It was also provided that the library association might issue mortgage bonds upon the property to an amount not exceeding $80,000, payable at the option of the association, or the owners of the ground, within ten years from date, the bonds to be a lien upon the building and grounds prior and superior to any claim of the city or its library fund for the repurchase of the property. It was also provided that the interest and a part of the principal of the bonds should be paid out of the library tax as a preferred claim. The city also obligated itself to levy a library tax for a sum sufficient to pay the interest on the bonds or notes, to pay $5,000 annually of the principal of said bonds and the necessary expenses of operating the library. It was also provided that when the building should have been completed, the association should lease certain rooms therein to the city, the rentals thereof being fixed by the ordinance. This lease was to run for ten years, and the rentals were to be paid quarterly. Provision was made as to how these rentals should be used by the association; but, as this is not regarded as material, we shall not set it forth. Provision was also made for the purchase of the ground and building by the city upon giving thirty day's written notice, the exact language of the ordinance reading as follows:

Whenever the said city of Sioux City shall desire to purchase the said ground and building for said library funds upon one month's previous notice in writing to said company, it shall have the right to take possession of, own and control the same upon payment to said company in full for the same the actual cost of the same, after deducting the outstanding mortgage bonds, the payments thereon theretofore made, and shall also pay eight percent interest on such net unpaid balance, and all unpaid and legitimate

operating expenses connected with the management of said building by said company, and the floating or unbonded debt of said company, lawfully incurred in and about said business, and no more, and for the purpose of verifying such cost or expenses the city shall have access to all the books, contracts, vouchers, records and papers belonging to said company, and upon such payment said company shall surrender, convey and transfer to said city for said library fund, said grounds and buildings, furniture and fixtures therein, subject to any outstanding mortgage or other liens thereon.

The ordinance concludes as follows:

Sec. 12. It is the intention of this ordinance that a building shall be provided that shall furnish a suitable place for keeping the public city library, which may ultimately be purchased by said city at its actual cost, and that the said company building it shall not make a net income on the same exceeding 8 percent upon the advances from its own funds made therefor, and that the income from the parts of said building not used at the beginning for library purposes shall be applied to the benefit of said library.

Pursuant to this ordinance and the conveyance made thereunder, the city and the library association entered into a formal written contract, the material parts of which read as follows:

Now, therefore, in consideration of the premises and of one dollar by each of said parties to the other paid, and for the object and intent of said ordinance into effect, and in pursuance of the statutes in such cases made and provided, it is hereby agreed by and between said parties as follows:

First. Said party of the second part shall within the time in said ordinance specified, erect said library building and equip the same for the use of said library, and lease such portion of the same to the city as required and in the manner and on the terms and in all respects as

provided and contemplated in said ordinance, and use and apply the funds received from the city in the manner and for the purpose required in said ordinance, and in all other respects comply therewith.

Second.   Said first party shall cause to be conveyed to said second party the library site to wit:   The east 100 feet of lot 9 and the east 100 feet of the south 31 feet of lot 10, in block 5, Sioux City east addition, Woodbury County, Iowa, for mentioned consideration of thirty thousand dollars ($30,000), and for use of said building for library purposes said first party shall pay from year to year a sum equal to the amount specified in and by said ordinance and therein contemplated to be levied and collected by a library tax, which shall in no case exceed three mills on the dollar for any one year, and which sum shall be paid from and out of and shall be raised for that purpose by a special tax, as authorized and provided by section 461 of the Code of Iowa and chapter 18 of the Laws of the Twenty-Second General Assembly of Iowa, and by the statute in such cases made and provided, and which shall be so paid from year to year to the persons and parties and as and in the manner in said ordinance specified, and the amount levied and collected by said library tax shall never be applied or appropriated to any use whatever by said city, except the payment therefrom as specified and contemplated in said ordinance, and to the purchasing and retiring said mortgage debt and contributing to the sinking fund and the purchase of said property, and as provided by said ordinance and the laws governing the same, and such sinking fund shall in no case be applied or appropriated for any purpose whatever save and excepting the retiring of said bonds.   And said party shall, from its general funds, as current running expenses of the city, pay annually the rental of four percent upon the value of the part used by it for general city purposes, all as provided in said ordinance, and each party shall on its part perform and keep the requirements in said ordinance provided the same as if written at length in this contract.

This contract was made on the 9th day of March, 1901.   On July 1, 1901, the Library & Building Association issued $80,000 in bonds against the property, and

soon thereafter undertook the erection of a building on the lot conveyed to it. In so doing it damaged plaintiff's abutting property, and in an action brought by him against the city and the library association he recovered judgment against the association in the sum of $3,125. The city was held not liable in that suit for the damages done. While a motion for a new trial was pending in that case the Library & Building Association transferred the building and grounds to the city of Sioux City. This occurred August 23, 1899. Soon thereafter the city caused its trustees to reconvey the legal title to the property to the library association, and on July 1, 1901, it issued $80,000 in bonds against the property. From year to year, from that time down to the day of trial, the city caused a levy of taxes to be made according to its ordinance and contract, and, in addition to the interest on the bonds, paid $57,000 of the principal thereof, and also paid the rentals fixed for the use of its offices. This action is to set aside the deed made by the library association to the city, dated August 9, 1899, upon the ground that it was without consideration, and was and is fraudulent and void, because made with intent to hinder, delay and defraud creditors. The library association was made a party, and being in default, a decree was rendered against it as of date June 19, 1905. Upon trial to the court upon the issues presented by the city a decree was also entered against it as of date June 1, 1907. The city alone appeals, and it did not serve notice on the library association. The primary liability of the city for the damages done plaintiff has been adjudicated, and can not be relitigated in this action, and the only question for determination here is, Should the deed from the association to the city be set aside because without consideration, or by reason of being fraudulent and void as to the creditors of the association?

I. First, it is argued that, as no notice of appeal was served upon the library association, this court is without

jurisdiction of the action, and the appeal should be dis-
missed. Reduced to its last analysis, the
case is an ordinary one wherein a judgment
creditor is seeking, by bill in equity, to
subject property standing in the name of a stranger to
payment of his judgment, upon the ground that this
stranger, by reason of fraud or otherwise, holds the title in
trust, subject to the payment of his claim. This trust may
grow out of a showing of fraud or want of consideration
for the conveyance, or it may be shown that the title is
in fact held in trust subject to the payment of all just
debts of the grantor. In such cases the grantor, while a
proper, is not a necessary, party. *Potter v. Phillips,* 44
Iowa, 353; *Harlin v. Stevenson,* 30 Iowa, 371; *Dunn v.
Wolf,* 81 Iowa, 688. This is upon the theory that, as the
grantor has parted with all his interest in the property, he
is concluded by the conveyance from claiming any interest
therein. This being true, it was not necessary for the
city to serve its notice of appeal upon the library as-
sociation, for, no matter what the final decree here, its
interests can not be injuriously affected. In *Wright v.
Mahaffey,* 76 Iowa, 96, it is squarely held that notice of
appeal need not be served upon the grantor, although made
a party to the proceedings.

1. APPEAL: ser-
vice of notice:
necessary
parties.

II. If we understand the contention made for appel-
lant, it is that the city did not act fraudulently in taking
the deed, that it simply took what it had a right to demand
under its contract with the library associa-
tion made prior to the time when any lia-
bility to the plaintiff arose, and that in carry-
ing out this contract it perpetrated no fraud. The trial
court did not attempt to settle the rights of the bondholders,
nor to adjudicate the rights of the city in and to the li-
brary property growing out of payments made under the
ordinance and contracts hitherto set out. All that it did
was to set aside the deed from the library association, which

2. FRAUDULENT
CONVEYANCES:
creditors'
suits.

was filed for record August 25, 1899, as being fraudulent and void and of no effect in so far as plaintiff's judgment is concerned. Whatever rights the bondholders may have, and whatever equities may exist in favor of the city independent of the deed, do not seem to have been adjudicated. On this appeal, then, we have the simple question of fact. Was this deed made with intent to hinder, delay or defraud creditors, and should it be set aside for that reason? It will be observed that no certain time was fixed for the reconveyance of the property to the city. The right thereto was optional with the city upon notice given. The purchase price was fixed although not in a stated sum, and was to be more than the city had already invested therein. As to this excess it was in truth a purchaser, and not simply a creditor seeking to secure its claim. Being such purchaser, it occupied a different relation from that of creditor, and, if it knew, or had reason to believe, that the library association was attempting to defraud its creditors, was chargeable with such knowledge, and to the extent of the price paid, or agreed to be paid, or to the valuation over and above its legitimate claims theretofore created, was a trustee for the library association, and the property to that extent was liable to the payment of the debts of the association. There is no doubt under the record that the city had knowledge of plaintiff's judgment, and that the library association was endeavoring to avoid the payment thereof by transferring the property to the city, and we are constrained to hold that the officers of the city either had actual knowledge of such purpose, and participated therein, or that they had such notice as should have put them upon inquiry which, if followed up, would have disclosed the intent of the library association. In either event the deed should be set aside, and the property held subject to the payment of the judgment. *Liddle v. Allen,* 90 Iowa, 738; *Richards v. Schreiber,* 98 Iowa, 422; *Rosenheim v. Flanders,* 114 Iowa, 291; *Carbiener v. Montgom-*

*ery,* 97 Iowa, 659; *Parker v. Parker,* 56.Iowa, 111. As the district court did not attempt to fix the right of the bondholders or of the city independent of the conveyance, we do not do so in this opinion.

All that is now held is that the district court was right in setting aside the conveyance to the city. This being true, the decree must be, and it is, *affirmed.*